UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff, Case Number 25-20777

v. Honorable David M. Lawson

RACHELLE PRITCHARD,

Defendant.
______________________________________/

**OPINION AND ORDER ON DEFENDANT'S MOTIONS *IN LIMINE***

Defendant Rachelle Pritchard is charged along with codefendant Michael Davis with committing wire fraud by successfully executing a scheme to use stolen identities to obtain benefits from a government program. Pritchard has filed two pretrial motions *in limine*, one seeking the admission of a hearsay statement from a person who says that he was the one who actually committed the fraud scheme, and another seeking the exclusion of evidence that she engaged in another fraud scheme to obtain benefits from a different government program. The Court heard oral argument on November 18, 2026. The hearsay declarant's statement confesses involvement in the crime and tends to exculpate Pritchard, but it is not "supported by corroborating circumstances that clearly indicate its trustworthiness," Fed. R. Evid. 804(b)(3)(B), and therefore it does not satisfy the requirements for this hearsay exception based on the present record. The evidence of Pritchard's involvement in another fraud scheme would be offered by the government for a proper purpose, but based on the present record, its modest probative value is substantially outweighed by unfair prejudice, and by the danger of jury confusion and undue delay. The motion to admit the hearsay statement will be denied and the motion to exclude evidence of the separate fraud scheme will be granted. However, if additional information that affects the analysis for either item of evidence is presented at trial, the Court, on request, may reconsider its rulings.

I.

According to the indictment, defendant Pritchard and codefendant Davis conspired to file fraudulent unemployment insurance (UI) claims, collecting approximately $1.9 million in UI benefits. The scheme allegedly took place in 2020 and 2021, during the COVID-19 pandemic. At that time, the State of Michigan distributed UI benefit payments to claimants in two ways: by mailing Bank of America debit cards to claimants; and by direct deposits into claimants' bank accounts. The government alleges that Pritchard and Davis acquired personally identifying information (PII) of various individuals, submitted UI claims on their behalf without their knowledge, and directed that payments be sent via mail to addresses controlled by the defendants or deposited into bank accounts controlled by the defendants.

The case was initiated by complaint in November 2024. ECF No. 1. Pertinent to the present motions, the complaint alleges that Pritchard was captured on an ATM video camera checking the balances of three purported claimants — "A.D.," "D.H.," and "S.K." *Id.* at ¶35. The claims for all three were submitted from a discrete Internet Protocol (IP) address. In total, 122 UI claims were submitted from this IP address, including claims made on behalf of Davis and Pritchard themselves. Payments for multiple claimants associated with the same IP address were deposited into bank accounts associated with Pritchard.

The government alleges that Pritchard obtained the PII for some of the purported claimants through Rock Connections, her then-employer. Rock allegedly has confirmed that it had received or retained PII associated with 33 of the purported claimants, and it also confirmed that Pritchard had access to PII in the course of her employment. Moreover, a search of a computer found in Davis's and Pritchard's residence revealed images containing certain claimants' PII.

A grand jury returned a ten-count indictment in October 2025 charging Davis and Pritchard with conspiracy to commit wire fraud under 18 U.S.C. § 1349 (Count One) based on the alleged UI scheme. Pritchard also was charged with aggravated identity theft under 18 U.S.C. § 1028A for misappropriating and using the personal information of A.D., D.H., and S.K. in furtherance of the scheme (Counts Five, Six, and Seven). The remaining counts are directed only against Davis.

In the first of her two motions, Pritchard seeks admission of an affidavit from one Darrell Brown in which he avers that he logged into Pritchard's computer, accessed personal information of her clients at Rock, and used the information to file fraudulent unemployment claims without Pritchard's knowledge. The second seeks to exclude text messages that the government intends to offer to show Pritchard's involvement in a separate fraudulent scheme to obtain Small Business Administration (SBA) loans.

II.

Pritchard first seeks a ruling in advance of trial on the admissibility of an affidavit purportedly executed by non-party Darrell Brown, in which he takes at least some of the blame for the fraudulent conduct attributed to Prichard.

A.

At oral argument, Davis's attorney explained that Brown contacted her and made statements admitting that he accessed Prichard's computer, obtained the PII of individuals, and then submitted UI claims in their names. The attorney shared that information with Prichard's lawyer, who engaged his investigator, Desiree Edwards, who located Brown and interviewed him in the presence of Prichard's lawyer. From his interview notes, Prichard's lawyer drafted an affidavit that Brown reviewed and signed. The handwritten affidavit, which Edwards notarized, reads:

> I, Darrell Durrand Brown, being duly sworn, hereby states [sic] that:
>
> 1. I am at least 18 years, competent to testify, understand the implications of the oath of this affidavit, and that this affidavit is made based upon my personal knowledge.
>
> 2. I have known Rachelle Pritchard since at least 2020. I was introduced to Pritchard by Michael Davis.
>
> 3. I met Pritchard with the intention to perform handyman duties inside and outside of her home.
>
> 4. While inside Pritchard's home I would access her computer to obtain personal information of her clients stored in her computer.
>
> 5. I would use the information without Pritchard's knowledge to file fraudulent unemployment claims.

ECF No. 70, PageID.240-41. Presumably, Prichard also wants to call the investigator as a witness to testify to Brown's out-of-court statement.

The government observes that Brown made a similar confession several weeks before the indictment was returned, but he resisted government agents' attempts to follow up. According to a report prepared by the Office of the Inspector General of the Department of Labor (DOL-OIG), Brown contacted United States probation officer David Smith in October 2025 wanting to confess to unemployment insurance fraud for which his friend already had been arrested. ECF No. 73-1, PageID.508. Smith reported the matter to a DOL-OIG agent, who then contacted Brown and scheduled a meeting with him. *Ibid.* Brown rescheduled the meeting twice due to family conflicts, but he did not appear on the rescheduled meeting date. *Ibid.* Agents then called Brown, who said he was at home in his apartment at 2500 West Grand Boulevard in Detroit. *Id.* at PageID.509. When agents went to the address, nobody at the apartment or in the management office recognized Brown's name or photo. *Ibid.*

According to the government, agents eventually reached Brown via phone, and Brown gave them the name of an attorney. ECF No. 73, PageID.495. The AUSA handling a related

matter contacted the attorney, who reported that he had been unable to reach Brown after multiple attempts. *Ibid.* Sometime later, Pritchard disclosed Brown's affidavit to the government, at which point the government issued a target letter, allowing Brown to obtain counsel. *Id.* at PageID.496-97. The parties both state that an attorney from the Federal Public Defender's office attempted to contact Brown, but Brown has either declined representation or refused to communicate with the attorney. *Id.* at PageID.497; ECF No. 70, PageID.232.

B.

Brown's affidavit and the investigator's anticipated testimony describing Brown's out-of-court statements amount to hearsay, *see* Fed. R. Evid. 801(c), which would not be admissible at trial unless an exception to the hearsay rule applies, Fed. R. Evid. 802. Prichard invokes Evidence Rule 804(b)(3), which allows admission of a hearsay statement by a declarant who is unavailable to testify at trial if the statement is against the declarant's pecuniary or penal interest. The rule requires that the statement be one that "a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it . . . had so great a tendency . . . to expose the declarant to civil or criminal liability." Fed. R. Evid. 804(b)(3)(A). But there is a caveat applicable to cases like the present one:

> [I]f offered in a criminal case as one that tends to expose the declarant to criminal liability, [the statement must be] supported by corroborating circumstances that clearly indicate its trustworthiness after considering the totality of circumstances under which it was made and any evidence that supports or undermines it.

Fed. R. Evid. 804(b)(3)(B).

For the purpose of the present motion, the parties agree that Brown's statement exposes him to criminal liability and that he is likely to be unavailable for the trial. Therefore, the only dispute bearing on admissibility is whether the corroboration requirement is satisfied. That requirement is unique to criminal cases, and it is based upon the notion "that statements . . . tending

to exculpate the accused are more suspect and so should have their admissibility conditioned upon some further provision insuring trustworthiness." Fed. R. Evid. R. 804, advisory committee's notes to the 1974 enactment.

Before 2024, courts were split over how Rule 804(b)(3)'s corroboration requirement should be applied. The Sixth Circuit held that district courts should not focus "on whether other evidence in the case corroborates what the statement asserts," but must confine their examination to "whether there are corroborating circumstances which clearly indicate the trustworthiness of the statement itself." *United States v. Johnson*, 581 F.3d 320, 327 (6th Cir. 2009) (quoting *United States v. Franklin*, 415 F.3d 537, 547 (6th Cir. 2005)). Other circuits, however, held that courts could consider the extent to which the statement was corroborated or contradicted by other evidence in the record. *See generally* Daniel J. Capra & Jessica Berch, *Evidence Circuit Splits, and What to Do About Them*, 56 U.C. Davis L. Rev. 127, 166-69 (2022) (discussing circuit split).

Rule 804 was amended in December 2024 to embrace the second approach. As the government observes, Rule 804(b) now provides that a statement against penal interest offered in a criminal case must be "supported by corroborating circumstances that clearly indicate its trustworthiness after considering the totality of circumstances under which it was made and *any* evidence that supports or undermines it." Fed. R. Evid. 804(b)(3)(B) (emphasis added). The advisory committee explained that this amendment was meant to clarify that courts must consider *both* (1) whether the statement was made in circumstances indicating trustworthiness *and* (2) whether the statement is consistent or inconsistent with other evidence in the record:

> Rule 804(b)(3)(B) has been amended to require that in assessing whether a statement is supported by "corroborating circumstances that clearly indicate its trustworthiness," the court must consider not only the totality of the circumstances under which the statement was made, but also any evidence supporting or undermining it. While most courts have considered evidence independent of the statement, some courts have refused to do so. The rule now provides for a uniform

> approach and recognizes that the existence or absence of independent evidence supporting the statement is relevant to, but not necessarily dispositive of, whether a statement that tends to expose the declarant to criminal liability should be admissible under this exception when offered in a criminal case.

Fed. R. Evid. 804, advisory committee's notes to the 2024 amendments. Courts therefore must consider both the circumstances surrounding the making of the statement, such as the spontaneity of the statement and the declarant's motivations, as well as other evidence in the record supporting or undermining the declarant's account. *Ibid.*

Despite this unequivocal explanation, a published Sixth Circuit case from this year cites pre-amendment caselaw for the proposition that the presence or absence of independent information supporting the statement is not relevant. *See United States v. Blake*, 166 F.4th 611, 621 (6th Cir. 2026) ("Rule 804(b)(3)'s trustworthiness analysis focuses not 'on whether other evidence in the case corroborates what the statement asserts,' but instead asks whether 'there are corroborating circumstances which clearly indicate the trustworthiness of the statement itself,' meaning corroboration that the unavailable person made the purported statement and did so without an intent to fabricate." (quoting *Johnson*, 581 F.3d at 327)). However, the *Blake* opinion is not binding on this point because the recent amendment was not discussed and the parties had not raised this discrete issue. *See United States v. L. A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 38 (1952) ("The [issue] was not there raised in briefs or argument nor discussed in the opinion of the Court. Therefore, the case is not a binding precedent on this point."). Moreover, the trial in *Blake* ended in August 2024, before the amendment was effective. *See* Jury Trial Transcript, vol. 8, *United States v. Blake*, No. 22-20519-1 (E.D. Mich. August 12, 2024), ECF No. 332.

Applying the present text of the evidence rule, the circumstances surrounding the making of Brown's statement do not clearly demonstrate its trustworthiness. Factors relevant to this inquiry include whether circumstances show the declarant's "intent to fabricate," *United States v.*

*Cunningham*, No. 25-5593, 2026 WL 1999391, at *5 (6th Cir. July 10, 2026) (quoting *Blake*, 166 F.4th at 621), and whether the defendant and the declarant had a "close relationship," *id.* at *6 (quoting *United States v. Price*, 134 F.3d 340, 348 (6th Cir. 1998)). Neither of these factors are strongly suggestive of trustworthiness here. There is no direct evidence of a motivation for Brown to lie, but there are no compelling reasons to believe that Brown was motivated to tell the truth, either. No motive at all is apparent from the affidavit. It also is relevant that Pritchard was Brown's employer or client, and that the two met through Davis, Pritchard's alleged coconspirator. Although a defendant's handyman would be less likely to lie on her behalf than, say, a close family member, the relationship between Brown and Pritchard was something less than arm's length.

Pritchard suggests that the statement is trustworthy because it was given in the form of an affidavit and made in the presence of an investigator and an attorney. But these circumstances undermine the statement's trustworthiness at least as much as they bolster it. Providing the statement in the form of an affidavit gave Brown (or the affidavit's scrivener) an opportunity to choose his words carefully without the opportunity for an adverse party to question his story through cross-examination or otherwise. Brown therefore had ample opportunity to fabricate his assertions if he wanted to. And if Brown were motivated to lie on Pritchard's behalf, the presence of an attorney and investigator aligned with Pritchard hardly would dissuade him from doing so.

Similarly, the fact that Brown evidently made the same confession multiple times cuts both ways. One could deem the confession more trustworthy because his story remained consistent when speaking to multiple people. On the other hand, if Brown wanted to make a false confession to exculpate Pritchard, there is no reason he could not have made the same false confession more than once. It also is difficult to assign much weight to the consistency of Brown's story because,

considering the lack of detail in the confession, it would not be a particularly difficult story to repeat.

The other evidence in the record does little to corroborate or contradict the statements in the affidavit. The government urges that the affidavit is untrustworthy because other evidence tends to show that Pritchard personally was involved in the UI scheme. However, this information does not necessarily contradict the affidavit, since Brown never explicitly disclaims Pritchard's involvement. The affidavit states that Brown used information gained from Pritchard's computer to commit UI fraud without her knowledge, but it does not exclude the possibility that Pritchard was herself engaged in a similar scheme independently. Similarly, the government's assertion that UI claims on Brown's behalf were made from a different computer does not necessarily contradict any of the statements in the affidavit, since Brown does not assert in the affidavit that he made a UI claim on his own behalf from Pritchard's computer.

Equally important, though, Pritchard does not identify any other evidence in the record corroborating the affidavit's assertions. In fact, it appears that Brown has made himself scarce, avoiding both defense and government representatives who want to question him further. So, just as the evidence in the record does not clearly contradict Brown's account, it does not clearly demonstrate its trustworthiness, either. As the proponent of the evidence, it is Pritchard who has the burden to establish admissibility. *See United States v. Brika*, 416 F.3d 514, 529 (6th Cir. 2005); *see also In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prods. Liab. Litig.*, 512 F. Supp. 3d 803, 810 (S.D. Ohio 2021) ("As always, the burden of showing admissibility of evidence is on its proponent." (citing *Brika*, 416 F.3d at 529)).

Nothing in the record or in the circumstances surrounding the statement provides clear assurance that Brown is telling the truth. On the present record, Pritchard has not met her burden

of showing that the circumstances "*clearly* indicate [the statement's] trustworthiness." Fed. R. Evid. 804(b)(3)(B) (emphasis added). If additional evidence comes to light, the Court will consider it. But for now, Pritchard's motion to admit Brown's out-of-court statements must be denied.

III.

The government provided Pritchard notice that it intends to offer evidence in the form of text messages that tends to show that Pritchard was involved in a separate fraudulent scheme with her sister, identified as "T.P.," to obtain loans through pandemic relief programs administered by the Small Business Administration (SBA). T.P. since has been indicted for her involvement in the scheme, and her case is pending before another judge in this district. Pritchard was not charged in T.P.'s case, but the government maintains that she was involved in the underlying scheme. Pritchard moves to exclude that evidence.

A.

The government wants to introduce a series of text messages, which it believes will show that Pritchard collaborated with her sister to submit fraudulent SBA loan applications. For instance, on May 19, 2020, T.P. allegedly texted Pritchard to tell her that "ma's was approved." ECF No. 74-3, PageID.559. Prichard responds, "How [did] she get approved before me[?]" *Ibid.* T.P. replies, "Cuz you ain't have a real business[.] So it takes longer." *Id.* at PageID.560. An exchange that occurs a few minutes beforehand suggests that the sisters are discussing SBA loan applications:

| | |
|---|---|
| Pritchard | When my sba suppose to hit or I got denied [emoji] |
| T.P. | Girl I just put it in yesterday<br>It take 3-5 business days |

*Id.* at PageID.557. A thread from later in the same discussion also appears to discuss submitting an application on behalf of "Ma" without her knowledge:

| | |
|---|---|
| Pritchard | I'm telling Ma<br>U childish<br>I wasn't even gone tell [emojis] |
| T.P. | . . .<br>With hers it did not ask for tax id so she can use Andes<br>But she might not want to do it<br>But we gotta find a way to do it without her knowing |
| Pritchard | Period Pooh. We can just do it. Send it to my indi acct<br>I got An'Des check book under my bed |
| T.P. | I can look up the articles |
| Pritchard | What else we need |
| T.P. | But I need the tax Id number<br>. . . |
| Pritchard | Ok I'll find it |
| T.P. | Cool<br>I know it's in some or papers or old tax paper<br>Maybe look on pa computer |
| Pritchard | Ok |
| T.P. | And look up her taxes |

ECF No. 74-3, PageID.560-63.

An exchange on July 15, 2020 appears to discuss falsifying paperwork to obtain Paycheck Protection Program (PPP) loans:

| | |
|---|---|
| Pritchard | Is ppp over? |
| T.P. | No. |
| Pritchard | We need like ID's and stuff or nah? |
| T.P. | Yeah |

| | |
|---|---|
| Pritchard | Oh dang we coulda tried Neal and steve but they don't have no identification [emoji]<br>. . .<br>I got it. Use all billy paperwork and change it to my name and soc and then send through the one Nikia was talking bout |
| T.P. | She was talking about the same exact thing I did<br>It's just a scam that, that girl was doing |
| Pritchard | No I meant send it through fundbank<br>I want a PPP [emojis] |
| T.P. | Oh<br>Fundbank suck<br>I tried they ask for too much info |

ECF No. 74-3, PageID.706-09. (The government represents that "FundBank" was a lender authorized by the SBA to approve pandemic relief loans. ECF No. 74, PageID.528 n.4.)

The government presumably wants to introduce all of these text messages, plus some additional documents, to prove the separate fraudulent scheme.

Pritchard objects to this evidence, contending that it is inadmissible character evidence that would prove only that she has a propensity to commit fraud crimes, and for that purpose it is inadmissible.

B.

With limited and carefully circumscribed exceptions not applicable here, evidence of a person's character or a trait of character is not admissible to prove that person's conduct. Fed. R. Evid. 404(a)(1) ("Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait."); Fed. R. Evid. 404(b)(1) ("Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the

character."). In other words, the government may not offer evidence of a defendant's criminal conduct in unrelated instances to show the defendant's general criminal propensities. However, such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

The government eschews any intention of proving a criminal propensity with this evidence. Instead, it professes to introduce the text messages to prove Prichard's "(1) motive, intent, and plan to defraud pandemic relief programs; (2) her knowledge of pandemic relief programs and their vulnerability to fraud; and (3) her absence of mistake/lack of accident in fraudulently obtaining, accessing, and/or using fraudulently obtained pandemic relief funds." ECF No. 68, PageID.225. Pritchard argues that the government has not provided enough foundation to show that the text messages are relevant to these purposes or that they describe the alleged loan fraud scheme for which T.P. was indicted. Moreover, she asserts that the text messages generally describe T.P.'s actions rather than Pritchard's. And she contends that the messages are unfairly prejudicial because they would cause the jury to attribute bad acts committed by Pritchard's sister to Pritchard herself.

Courts employ a three-step process to assess the admissibility of so-called "other acts" evidence:

> First, the district court must make a preliminary determination regarding whether there is sufficient evidence that the "other acts" took place. The district court must then determine whether those "other acts" are admissible for a proper purpose under Rule 404(b). Finally, the district court must determine whether the "other acts" evidence is more prejudicial than probative.

*United States v. Jaffal*, 79 F.4th 582, 594 (6th Cir. 2023) (quoting *United States v. Bell*, 516 F.3d 432, 440 (6th Cir. 2008)). "Once the district court decides that the evidence is admissible under Rule 404(b), then it 'must carefully identify in its instructions to the jury, the specific factor named

in the rule that is relied upon to justify admission of the other acts evidence, explain why that factor is material, and warn the jurors against using the evidence to draw the inferences expressly forbidden [by] Rule 404(b).'" *Bell*, 516 F.3d at 441 (quoting *United States v. Johnson*, 27 F.3d 1186, 1194 (6th Cir. 1994)).

1.

For the first step, the court determines whether "there is sufficient evidence to support a finding by the jury that the defendant committed the similar act." *United States v. Yu Qin*, 688 F.3d 257, 262 (6th Cir. 2012) (quoting *Huddleston v. United States*, 485 U.S. 681, 685 (1988)). "A finding that there is sufficient evidence does not require the government to establish that the act occurred by a preponderance of the evidence; rather, it only need produce enough evidence whereby 'the jury can reasonably conclude that the act occurred and that the defendant was the actor.'" *United States v. Richardson*, 597 F. App'x 328, 333 (6th Cir. 2015) (quoting *Bell*, 516 F.3d at 441); *see also* Fed. R. Evid. 104(b). The Court does not consider any piece of evidence in isolation but instead views "all evidence presented to the jury," direct and circumstantial, to decide whether sufficient evidence exists to support a finding that the alleged prior conduct occurred. *Huddleston*, 485 U.S. at 690-91.

The Court cannot resolve this threshold question definitively at the motion *in limine* stage because it does not have access to all of the evidence that will be presented to the jury regarding the scheme. Nonetheless, there probably will be sufficient evidence for a jury to find that Pritchard collaborated with her sister to submit fraudulent SBA loan applications if the government is permitted to present evidence relevant to that point. The text messages could be viewed by a reasonable juror as establishing an agreement between Pritchard and her sister to submit phony claims to the SBA to obtain PPP loans. The government's brief also provides numerous other

examples of exchanges that appear to discuss loan applications or falsifying documents. *See* ECF No. 74, PageID.522-36. Additionally, the government has provided a copy of an SBA record of a loan issued to Pritchard on behalf of "Tiny Tots" — an entity discussed in the messages — that was approved but placed on hold for fraud. ECF No. 74-5. The government might be able to provide further information or context at trial that corroborates the existence of the scheme.

It is plausible that the government will be able to present evidence at trial sufficient for the jury to believe that the alleged SBA fraud scheme occurred. Therefore, the evidence cannot be excluded solely based upon lack of proof of the scheme.

2.

The government also purportedly intends to offer the evidence for a proper purpose. It identifies motive, intent, and a plan to defraud the government; Pritchard's knowledge of pandemic relief programs and how they work; and the absence of any mistake in submitting the claims.

The "knowledge" theory of admissibility is not persuasive. Pritchard's knowledge of vulnerabilities in a specific pandemic relief program might be admissible to show that she had a unique ability or opportunity to carry out the scheme. *See United States v. De Oleo*, 697 F.3d 338, 343-44 (6th Cir. 2012) (finding evidence of defendant's involvement in other fraudulent medical clinics admissible to prove that defendant knew how to defraud Medicare in a similar manner); *United States v. Cordero*, 973 F.3d 603, 623 (6th Cir. 2020) ("Cordero's successful operation of a drug distribution scheme from within prison demonstrated his knowledge and skill to do so again."). But it is difficult to draw that kind of inference here, where the two alleged schemes targeted different programs. Presumably, the methods of submitting applications through both programs are different, and the government does not identify a specific feature or vulnerability common to both that Pritchard was uniquely positioned to exploit. Therefore, it is not clear how

her knowledge or ability to defraud one program would make it more likely that she defrauded the other.

The intent and lack-of-accident rationales are on better footing. Evidence of the defendant's involvement in similar crimes is permissible when used to prove that a defendant acted with a specific intent. *United States v. Underwood*, 129 F.4th 912, 937-38 (6th Cir. 2025). For example, "evidence of prior drug dealing is generally admissible in a drug case to prove intent to distribute." *Ibid.* Similarly, "close-in-time fraud at other medical facilities may show the defendant's intent to participate in the indicted healthcare fraud." *United States v. Manzano*, 793 F. App'x 360, 366 (6th Cir. 2019). Here, Prichard is charged with wire fraud, a specific-intent crime, in connection with the UI scheme. *See United States v. Robinson*, 99 F.4th 344, 357 (6th Cir. 2024) ("To convict a defendant of wire fraud the government must prove specific intent, which means not only that a defendant must knowingly make a material misrepresentation or knowingly omit a material fact, but also that the misrepresentation or omission must have the purpose of inducing the victim of the fraud to part with property or undertake some action that he would not otherwise do absent the misrepresentation or omission."). The government bears the burden of proof on that element.

"To determine if evidence of other acts is probative of intent," the Court considers "whether the evidence relates to conduct that is substantially similar and reasonably near in time to the specific intent offense at issue." *United States v. Emmons*, 8 F.4th 454, 475 (6th Cir. 2021) (cleaned up). "Evidence showing that a defendant formed a particular intent on a prior occasion may provide insight into [her] state of mind when [s]he committed the charged offense, in particular where the evidence shows that the defendant took similar actions in a similar situation." *Ibid.* (cleaned up). "It is not necessary that the crimes be identical in every detail, but the prior

acts should be part of the same scheme or involve a similar *modus operandi* as the present offense." *Ibid.* (cleaned up).

Evidence of Pritchard's involvement in the SBA scheme is a proper method of proving her specific intent to defraud in the UI scheme. In both the SBA scheme and the UI scheme, the perpetrators submitted false information in order to obtain money through pandemic-related benefits programs, and they both allegedly occurred during the COVID-19 pandemic. Proof that Pritchard engaged in another scheme with a similar object at around the same time would tend to rebut the notion that she lacked the requisite intent to defraud. Likewise, Pritchard's involvement in two somewhat similar schemes tends to exclude the possibility that she participated in either one mistakenly. *See United States v. Boggs*, 737 F. App'x 243, 252 (6th Cir. 2018) ("It is common sense that the more often one does something, the less likely it is done by mistake, and the more likely it is calculated and intentional conduct.").

3.

Even if the evidence is admissible for a proper purpose, if it also could be considered for an improper purpose, the evidence must be excluded when the danger of unfair prejudice, jury confusion, or the waste of time "substantially outweigh[s]" the evidence's legitimate probative force. Fed. R. Evid. 403. These considerations are highly contextual and call for an evaluation of the evidence in light of the actual contested issues in the case. That is, the purpose of the challenged evidence must be "material or 'in issue'" and "probative with regard to the purpose for which it is offered." *Emmons*, 8 F.4th at 474 (quotation marks omitted). "[W]hether a fact is 'in issue' often depends on the defendant's theory and the proofs as they develop." *United States v. Merriweather*, 78 F.3d 1070, 1076 (6th Cir. 1996).

Here, although evidence of the other fraud scheme may show intent or lack of mistake, its actual probative value is weak for both points. Pritchard does not appear to assert that she carried out the charged conduct mistakenly or unintentionally. Rather, the defense appears to be that another person — Brown — used Pritchard's computer to obtain PII without her knowledge and then file the bogus claims. The defense turns on whether she carried out the scheme *at all*, not what her goal or state of mind was when she did it.

Of course, the government may present "other acts" evidence to prove intent even when the defendant does not contest that element. *See Johnson*, 27 F.3d at 1193. But such evidence still has less probative value when the defendant's intent is not a disputed issue or is evident from the conduct itself. For instance, in *United States v. Jenkins*, the probative value of a prior drug conviction in proving intent was "microscopic at best" where the defendant was charged with possessing a quantity of drugs so large that one naturally would infer an intent to distribute them. 593 F.3d 480, 485 (6th Cir. 2010). Similarly, in *United States v. Asher*, the district court abused its discretion by admitting prior-acts evidence to prove intent because it was "specious" that a jury would believe that the defendant carried out the charged conduct — beating a prisoner, pretending to be a doctor, and falsifying incident reports — without doing so intentionally. 910 F.3d 854, 863 (6th Cir. 2018). "The conduct of which [the defendant] was accused provided, in and of itself, a sufficient basis for the jury to find his intent." *Ibid.* In the same way here, it is implausible that Pritchard could have misappropriated the identities of numerous third parties, submitted UI claims in their names, and redirected the payments to her own addresses and bank accounts unintentionally or for any purpose *other than* obtaining benefit payments by fraudulent means. Because the intent behind the conduct is likely to be evident from the conduct itself (if proven), the probative value of the second scheme is minimal when used to prove intent or lack of accident.

The probative value of that evidence is marginal, which is not to say that it is irrelevant. The relevance threshold is low. But under Evidence Rule 403, the probative force of that evidence must be measured against the unfair prejudice the other fraud evidence carries with it. "The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997) (citing 1 J. Weinstein, M. Berger, & J. McLaughlin, Weinstein's Evidence ¶ 403[03] (1996)). That idea, in turn, "embraces two distinct notions." *Dresser v. Cradle of Hope Adoption Ctr., Inc.*, 421 F. Supp. 2d 1024, 1030 (E.D. Mich. 2006). "First, when the evidence may tend to prove more than one proposition and thus could be considered for both a proper and an improper purpose, unfair prejudice can result when the improper purpose overwhelms or substantially overshadows any legitimate basis for receiving the evidence." *Ibid.* (citations omitted). Here, the evidence could be — and likely would be — considered by the jury as proof of the defendant's bad character.

"Second, unfair prejudice can result when evidence that is only marginally probative tends to be given preemptive weight by the jury substantially out of proportion to its logical force." *Ibid.* (citing *Sutkiewicz v. Monroe Cnty. Sheriff*, 110 F.3d 352, 360 (6th Cir. 1997) (stating that "[o]therwise relevant evidence may permissibly be excluded if it serves to inflame the passions of the jury")). "When jurors hear that a defendant has on earlier occasions committed essentially the same crime as that for which he is on trial, the information unquestionably has a powerful and prejudicial impact." *Jenkins*, 593 F.3d at 486 (quoting *Johnson*, 27 F.3d at 1193). "Even when properly instructed to consider the evidence only for some legitimate purpose . . . the danger is obvious that the jury will treat it as propensity evidence instead." *Ibid.* Evidence that Pritchard engaged in another similar fraud scheme invites not only the proper inference that she had the

intent to defraud, but also the improper inference that she acted in conformance with a negative character trait. Since the probative value of the evidence is minimal when offered for the proper purpose, the prejudicial effect of the improper inference substantially predominates.

Of course, the balance struck here depends on the assumption that Pritchard will not defend the case based on a lack of specific intent to defraud or by asserting that she submitted claims mistakenly. If the defense evolves into something different at trial, then the Court may have to revisit this determination. But there are also other considerations beyond the risk of unfair prejudice. Rule 403 also points to the danger of relevant evidence "confusing the issues, misleading the jury, [causing] undue delay, [and] wasting time." Fed. R. Evid. 403. Presenting evidence of two separate schemes involving two separate government programs might confuse the jury or, worse, cause it to conflate the two. Moreover, proving a second fraud scheme likely would result in a time-wasting "trial within a trial" on a side issue with only marginal relevance to the case at hand. *See Diesel Mach., Inc. v. B.R. Lee Indus., Inc.*, 418 F.3d 820, 834 (8th Cir. 2005) (affirming exclusion of evidence that "would have resulted in a trial within a trial that would not have been that helpful to the jury") (cleaned up). Again, though, that balance could change if the defense takes a different tack.

For now, the motion to exclude evidence of a different fraud scheme will be granted. The ruling is not definitive, however, *see* Fed. R. Evid. 103(b); *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994), and it may be revisited if circumstances change as discussed above.

IV.

Defendant Pritchard has not established that the out-of-court statements by declarant Darrell Brown qualifies under an exception to the rule against hearsay found in Evidence Rule

804(b)(3). The government's proposed evidence of Pritchard's alleged involvement in a different fraud scheme is not admissible under Evidence Rules 404(b) and 403.

Accordingly, it is **ORDERED** that defendant Pritchard's motion *in limine* to admit out-of-court statements by potential witness Darrell Brown (ECF No. 70) is **DENIED**.

It is further **ORDERED** that defendant Pritchard's motion *in limine* to exclude evidence of her involvement in a different fraud scheme (ECF No. 71) is **GRANTED**.

These are not definitive rulings and are subject to the contingencies discussed above.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: November 24, 2026